UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MARY BROWN,

                    Plaintiff,

                    **MEMORANDUM & ORDER**

-against-

                    07 CV 3416 (RJD)

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------X
DEARIE, Chief Judge.

Pursuant to 42 U.S.C. § 405(g), pro se plaintiff Mary Brown brings this action seeking reversal of the decision by defendant Commissioner of Social Security ("Commissioner") that she is not entitled to Disabled Widow's Insurance Benefits as provided for in Title II of the Social Security Act. Defendant moves for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### A.    Factual and Procedural History

Plaintiff was born on April 5, 1953, and resides with her adult daughter on the third floor of a three-story private dwelling in Brooklyn, New York. Tr. 118. She has a tenth grade education, and has no other formal schooling or vocational training. Tr. 119. Plaintiff previously held employment as a factory worker, but has not worked since 1978. Her husband, a transit employee whose salary provided all the household income, died on June 4, 2003.

On November 16, 2004, plaintiff applied for Disabled Widow's Insurance Benefits,

claiming that she has been disabled since January 1, 2000, as a result of osteoarthritis in both knees. Tr. 56-57. The claim was initially denied on March 3, 2005. Tr. 50. Plaintiff requested a hearing, and then was granted a sixty-day adjournment to obtain representation and additional medical evidence. By the time of her hearing on March 5, 2007, however, she had not obtained a lawyer and was unable to provide additional medical evidence. Tr. 10. Administrative Law Judge ("ALJ") Ronald R. Bosch conducted the hearing, where he reminded plaintiff of her right to representation and offered her the option of another adjournment. Tr. 111-12. Plaintiff elected to proceed without counsel. Tr. 112.

In a decision dated March 21, 2007, ALJ Bosch denied plaintiff's application for benefits. Proceeding pro se, plaintiff appealed the ALJ's decision. Tr. 6. The Appeals Council rejected plaintiff's request for review, thereby making the ALJ's ruling the final decision of the Commissioner. Tr. 3-5. Plaintiff commenced this action on August 14, 2007.

**B.     Medical Evidence**

Mrs. Brown did not furnish records from a treating physician. At the hearing, she testified that she could not afford a private physician after her husband's benefits expired, and has used emergency medical service as her primary care on several occasions. Tr. 121-22. She described Dr. Martin Valdez as her "former doctor" (Tr. 122) and stated that he diagnosed her with oseteoarthritis in both knees and prescribed Naprosyn. Tr. 80 (diagnosis of right knee, approximately March 1997), 121-22 ("they told me . . . if I'm going to go to the doctor, do it now because I'm going to be cut off. . . . [S]o I went and I got the left knee diagnosed . . . by my doctor, Dr. Valdez, . . . and [he] told me that, yes, it's arthritis in your left knee as well.") The ALJ did not seek further information regarding plaintiff's treatment history with Dr. Valdez, and

2

the administrative record contains no medical files documenting plaintiff's visits to Dr. Valdez before her husband's benefits expired.

Dr. Mariya Tsinis, a consultative orthopedic examiner, examined plaintiff on February 10, 2005. Plaintiff was fifty-one years old at the time. Plaintiff told Dr. Tsinis that she had suffered right knee pain since 1998, which worsened when she walked, used stairs, or stood for prolonged periods. Dr. Tsinis determined that plaintiff could sit for a normal amount of time, stand for one hour, walk for thirty minutes, and ascend and descend stairs. Tr. 83-85. She could bend forward, lift five to six pounds, dress and bathe herself. Id. Plaintiff reported that she did light cleaning and daily cooking, along with all of her own shopping. Id.

Upon examination, Dr. Tsinis found plaintiff's ranges of motion were normal. Although plaintiff complained of tenderness on palpation and pain when moving her right knee, a straight leg raising test yielded normal results, and neither knee exhibited signs of swelling. According to Dr. Tsinis, an x-ray revealed mild degenerative joint disease in her right knee, which he diagnosed as osteoarthritis. Dr. Tsinis concluded that plaintiff's capacity to lift, carry, push, pull, stand for prolonged periods, and walk were mildly impaired. Id.

On March 3, 2005, Richard Weksberg filled out a Residual Functional Capacity Assessment.[1] He opined that plaintiff could occasionally lift and carry fifty pounds, and frequently lift and carry twenty-five pounds, and could stand or sit about six hours in an eight hour work day. He listed her primary diagnosis as arthritis, with a secondary diagnosis of

---

[1] Richard Weksberg is identified in the record as a "Disability Analyst" for the New York State Office of Temporary and Disability Assistance. See Tr. 68. He signed the Residual Functional Capacity Assessment as a "Medical Consultant" but did not provide a Medical Consultant's Code. Tr. 97. The record contains no evidence to confirm that Mr. Weksberg examined plaintiff, or that he is even a medical doctor.

obesity. He further noted that she "says she can't stand too long—states she takes care of household chores including mopping floors and cooking—parially [sic] credible." Tr. 95.

On at least two occasions between October and December of 2006, plaintiff went to the Woodhull Hospital Emergency Department, complaining of pain in her knees and requesting the anti-inflammatory and pain-reliever Naproxen.

On March 1, 2007, Dr. Carmen Clark of Central Medical Group reviewed plaintiff's x-rays and noted generalized swelling and decreased flexion in both knees, though the record does not reflect whether Dr. Clark prescribed any treatment. Tr. 102.

### C. The Hearing and the ALJ's Ruling

In his March 21, 2007, ruling, ALJ Bosch applied the five step process as required by 20 C.F.R. § 404.1520(a)(4), concluding that plaintiff was "not disabled" within the meaning of the Act. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since her husbands death in June 4, 2003. At steps two and three he determined that although the condition in her knees was "severe" within the meaning of the Regulations, the symptoms were not sufficiently severe to meet or medically equal, either singly or in combination, any listed impairment in Appendix 1, Subpart P, Regulations No. 4. Tr. 13. At step four, he concluded that her residual functional capacity included the ability to sit, stand, or walk, each for periods of up to thirty minutes at a time. He noted plaintiff's testimony that she could ascend and descend stairs, bend forward, and lift about five pounds. Tr. 14. He found that she did light shopping, cooking, cleaning, and socialized with her family, and noted that her over the counter pain reliever offered some relief. The ALJ ultimately determined that she retained the functional capacity for medium work. Id. Because she had no past relevant work, at step five he applied

the Medical-Vocational Guidelines, concluding plaintiff was "not disabled." See Medical-Vocational Rule 203.18, 20 C.F.R. § 404, Subpart P, Appx. 2.[2] While plaintiff testified to bouts of depression at the hearing, the ALJ's decision makes no reference to any psychological or other nonexertional impairments.

## DISCUSSION

### A. Legal Standards

#### 1. Standard of Review

A district court reviews the Commissioner's decision to determine whether it was based upon substantial evidence and the correct legal standards. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). A district court should therefore set aside an ALJ's decision if "the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

But "the ALJ, unlike a judge in a trial, must [also] affirmatively develop the record in light of the essentially nonadversarial nature of a benefits proceeding." Batista v. Chater, 972 F. Supp. 211, 217 (S.D.N.Y. 1997) (internal quotations omitted). Indeed, the ALJ is under a heightened duty to develop the record where, as in this case, the claimant proceeds pro se. See

---

[2]Under the same Guidelines, a finding that the claimant is limited to sedentary work qualifies her as "disabled." See Medical-Vocational Rule 201.9, 20 C.F.R. § 404, Subpart P, Appx. 2. The claimant would be considered "not disabled," however, if she is capable of light work within the meaning of the Act. Id. at Medical-Vocational Rule 202.10.

Bluvband v. Heckler, 730 F.2d 886, 892 (2d Cir. 1984); Carroll v. Sec'y of Dep't of Health & Human Svcs., 872 F. Supp. 1200 (E.D.N.Y. 1995); Cox v. Apfel, 160 F.3d 1203 (8th Cir. 1998). After reviewing the entire record, Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999), the district court must determine whether remand may be necessary to develop the evidence or eliminate gaps in the record, Batista, 972 F. Supp. at 217.

## 2. Determination of Eligibility of Benefits

To qualify for benefits as a disabled widow, a claimant must establish that she was "disabled" within the meaning of the Social Security Act.[3] A claimant is disabled if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). The Social Security Administration has established a five-step process for determining whether an applicant is disabled:

> [I]n essence, if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Green-Younger Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (alternation in original) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4).

## B. Application

In applying the five steps, the ALJ concluded that "the evidence supports a finding that

---

[3]The ALJ found that plaintiff met all of the non-disability requirements for Disabled Widow's Insurance Benefits. Tr. 15; see 42 U.S.C. § 402(e).

6

the claimant can perform the demands of the full range of medium work." Tr. 14. "Medium work" under the Regulations requires the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). In finding that plaintiff was capable of medium work, the ALJ wrote:

> By the claimant's own account she can sit, stand for one hour, and can ambulate for thirty minutes. She can also ascend and descend stairs, can bend forward, *and can lift about five pounds*. She can dress and undress and bathe independently. She goes shopping and does light cleaning and cooking. . . . Her main pain reliever is over the counter medication and she has not required hospitalization or surgery. Accordingly, the undersigned finds the claimant retains the following residual functional capacity for medium work as set forth in the Regulations. *Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.*

Tr. 14 (emphasis added). ALJ Bosch does not explain how he concluded that plaintiff could perform medium work, and although he clearly rejected plaintiff's testimony, he offers no analysis of the evidence that might justify his rejection.

In addition, plaintiff apparently gave inconsistent answers to the question of her capacity to lift and carry which the ALJ did not address. When first asked by the ALJ about her ability to lift and carry, plaintiff responded that she could lift one hundred to hundred-forty pounds, but conceded that she was "only guessing or estimating." Tr. 125. When asked how many five-pound bags of sugar she thought she could lift, she responded that she could lift two, for a maximum of ten pounds. Tr. 126. But then, after further discussion, she said she might be able to carry twenty five pounds. Tr. 127.

The medical evidence does not provide much more clarity regarding plaintiff's ability to lift and carry sufficient weight to perform medium work. Dr. Tsinis's report indicated that plaintiff could lift five or six pounds. Conversely, the residual functional capacity assessment by

7

disability analyst Weksberg reflects the somewhat surprising opinion that she could lift fifty pounds, with frequent lifting of twenty-five pounds. Again, the ALJ did not address this contradiction, and did not, in fact, reference the residual functional capacity assessment at all. Because of the inconsistencies in the record regarding plaintiff's ability to lift and carry, the Court remands for further proceedings. Upon remand, the ALJ should develop the record as necessary to resolve the contradictions in the medical evidence. In particular, the ALJ should take steps to contact and to obtain medical records from Dr. Valdez, the treating physician who plaintiff claims originally diagnosed her arthritis in both knees.

Furthermore, plaintiff's testimony included a description of nonexertional impairment—i.e., depression—that the ALJ essentially ignored. When ALJ Bosch asked plaintiff to describe a typical day, she told him that she did things to try to put her in a good mood. Without prompting, she then described feelings of depression since her husband's passing. Tr. 133. Her sister's struggles with a terminal illness also made her "very, very depressed," and "kind of despondent." Tr. 133-35. Plaintiff disclosed to ALJ Bosch that she was "going nuts, you know, mentally." Tr. 135. In response, the ALJ asked, "[b]ut there's no record of any treatment or hospitalization for mental reasons?" Tr. 135. Plaintiff revealed that in the 1990's she took Paxil for depression, but

> never really [sought] help for it because I felt, you know, what is the need to, maybe they might not be able to help, you know, I felt hopeless at that time, you know what I'm saying, because I was going through problems with my husband, too, but other problems, other things. . . .

Tr. 136. Without inquiring further, the ALJ closed the hearing. Id.

This brief exchange does not satisfy the ALJ's affirmative burden to develop the record

and bring all relevant facts to light, particularly where the claimant appears pro se. See Abreu v. Apfel, No. 98 Civ. 0739, 1999 U.S. Dist. LEXIS 6016, at *11 (S.D.N.Y. Apr. 26, 1999). The ALJ did not ask if depression affected plaintiff's ability to work, or whether friends, family, and doctors knew of, and could substantiate, her alleged depression. The ALJ did not inquire into the nature of her symptoms, and did not advise her that without evidence of depression, he might reject her claim of nonexertional impairment. See id. (remanding where ALJ failed to inquire into relevant facts of pro se plaintiff's alleged emotional problems and depression). Furthermore, the ALJ made no mention of the alleged depression in his decision, making it unclear whether he considered this testimony at all. Merely because plaintiff did not specifically allege depression in her original pro se application does not excuse the ALJ from considering relevant testimony in his decision, or at a minimum developing the record as he is obligated to do. See, e.g., Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997).

The Court cannot say whether, upon review of a full record, plaintiff would be eligible for benefits based upon a significant nonexertional impairment. That decision is for the Commissioner. In order to make that determination, however, the Commissioner must have the benefit of all the relevant evidence. "Where there is some evidence of a nonexertional limitation, but insufficient evidence to make a determination regarding whether it significantly diminishes a pro se claimant's ability to work, the ALJ has an affirmative duty to develop the record." Williams v. Barnhart, No. 05 Civ. 7503, 2007 U.S. Dist. LEXIS 21678, at *32 (S.D.N.Y. Mar. 27, 2007). The Court also remands to the Commissioner in order to obtain the opinion of a consulting psychiatrist who can ascertain the accurateness and severity of plaintiff's claims of depression. See Felicie v. Apfel, No. 95 Civ. 2832, 1998 U.S. Dist. LEXIS 5068, at *22

(S.D.N.Y. Apr. 13, 1998). The ALJ should then "determine whether plaintiff's nonexertional limitations significantly diminish her ability to work and, if necessary, obtain the testimony of a vocational expert or other evidence regarding the existence of jobs in the national economy for an individual with [plaintiff's] limitations." Williams, 2007 U.S. Dist. at *33.

## CONCLUSION

For the reasons stated above, the Court remands to the Commissioner for further fact-finding and analysis consistent with this opinion. Motion for judgment on the pleadings is denied.

SO ORDERED.

Dated: Brooklyn, New York
       February 4, 2009

                                       s/ Judge Raymond J. Dearie
                                       ―――――――――――――――――
                                       RAYMOND J. DEARIE
                                       United States District Judge